1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   PUBLIC SERVICE MUTUAL                    No.  2:14-cv-00226-MCE-KJN
     INSURANCE CO.,
12
                  Plaintiff,
13                                            **MEMORANDUM AND ORDER**
          v.
14
     LIBERTY SURPLUS INSURANCE
15   CORPORATION and DOES 1 through
     10, inclusive,
16
                  Defendants.
17

18

19        Through the present action, Plaintiff Public Service Mutual Insurance Company

20   ("PSMIC" or "Plaintiff") seeks equitable indemnification from another insurance carrier,

21   Liberty Surplus Insurance Corporation ("LSIC") for amounts paid by PSMIC for the

22   defense and indemnification of its insureds, Fair Oaks Fountains, LLC ("FOF") and FPI

23   Management Company ("FPI").  According to PSMIC's Complaint, LSIC was obligated to

24   pay those amounts under its own policy, issued to Gala Construction, on grounds that

25   both FOF and FPI were specifically designated as additional insureds under the LSIC

26   policy, and because, according to PSMIC's Complaint, the LSIC policy was primary as to

27   the underlying loss.  That loss occurred when an injury occurred, allegedly as a result of

28   Gala's negligence, while Gala effectuated repairs on an apartment complex owned by

                                              1

1  FOF and managed by FPI.  Presently before the Court is Defendant LSIC's Motion to

2  Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6),[1]

3  which further includes a request that any reference to punitive damages be stricken in

4  accordance with Rule 12(f).  As set forth below, Defendant's Motion will be granted in

5  part and denied in part.[2]

6

7                                      **BACKGROUND**

8

9         On August 21, 2008, Diana Balfour, a tenant at the Fountains of Fair Oaks, an

10  apartment complex located in Fair Oaks, California, was injured when she slipped on

11  standing water in her apartment.  According to the Complaint, that water entered Ms.

12  Balfour's apartment through the roof as a result of an irrigation pipe broken by Gala or its

13  subcontractors while working on the complex.  According to the Complaint, the injuries

14  and damages claimed by Ms. Balfour arose out of the materials and/or services provided

15  by Gala pursuant to a construction contract entered into between Gala and FOF, the

16  entity that owned the complex.  Compl., ¶ 21.

17         The construction contract's general conditions required Gala to indemnify FOF

18  and its agents for liability arising out of Gala's work, providing in pertinent part as follows:

19              Contractor [Gala] shall indemnify and hold harmless the
                Owner [FOF and its agents or employees] from and against
20              claims, damages, losses and expenses, including but not
                limited to attorneys' fees, arising out of or resulting from
21              performance of the Work…. but only to the extent caused by
                the negligent acts or omissions of the Contractor, a
22              Subcontractor, anyone directly or indirectly employed by
                them to anyone for whose acts they may be liable, regardless
23              of whether or not such claim, damage, loss or expense is
                caused in part by a party indemnified hereunder.
24

25  Compl., Ex. B., p. 17, § 3,18.1 of the General Conditions.

26         [1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless
        otherwise stated.
27

28         [2] Having determined that oral argument was not of material assistance, the Court ordered this
        matter submitted on the papers.  E.D. Cal. Local R. 230(g).

                                            2

1    Additionally, the construction agreement itself required Gala to maintain general

2    liability insurance coverage in specific amounts, and mandated that FOF be named as

3    an additional insured on that policy by formal endorsement.  Compl., Ex. A, Article 16.

4    Consistent with that directive, the liability policy issued to Gala by LSIC contained a

5    separate endorsement specifically adding FOF by name as an insured.  Compl., Ex D.

6    The endorsement further specified that the coverage provided to FOF as an additional

7    insured was only with respect to FOF's liability arising from Gala's work on FOF's behalf.

8    Id.   Additionally, because FPI was FOF's real estate manager at the time of the subject

9    loss, FPI was made an additional insured under the LSCI policy by virtue of language

10   extending coverage to any organization acting as a real estate manager for an insured.

11   Compl, Ex. C, p. 15, Section II 2.b.  Perhaps most significantly, the LSIC policy specified

12   that the coverage it provided would be primary with respect to any other insurance

13   carried by additional insureds like FOF and FPI:

14              To the extent that this coverage is afforded to any additional
             insured under the policy, **such insurance shall apply as**
15           **primary and not contributing with any Insurance carried**
             **by such additional insured**, as required by written contract.
16

17   Compl, Exhibit C. Endorsement No. 15, p. 59 (emphasis added).

18         As the general liability carrier for FOF and FPI, Plaintiff  claims that it tendered the

19   defense of Ms. Balfour's action to LSIC on "no fewer than eight occasions between

20   November 12, 2008 and April 8, 2011."  Pl.'s Opp'n, 4:18-21.  Plaintiff contends that

21   LSIC has consistently refused to accept that tender, despite that fact that, according to

22   Plaintiff, "the injuries and damages prayed for by Ms. Balfour in the Underlying Action

23   arise of, or are directly and or indirectly connected with the work performed, materials

24   furnished by, and/or services provided by GALA, its employees, subcontractors or

25   agents to and/or on behalf of FOF and FPI" under the construction contract (Compl.,

26   6:28-7:3) and despite the language of LSIC's own policy which described its coverage as

27   primary.  Given LSIC's refusal to defend and indemnify, PSMIC claims it was forced to

28   provide a defense to FOF and FPI and to fund a settlement with Ms. Balfour reached in

3

1    April of 2913, which included the sum of $50,000 paid by PSMIC on behalf of FOF and

2    FPI.  PSMIC initially filed a suit against LSIC in the name of FOF and FPI.  That lawsuit

3    was voluntarily dismissed after PSMIC confirmed in discovery that it had funded the

4    defense and indemnification of FPF and FPI in the Balfour action such that FOF and  FPI

5    themselves sustained no damage.  PSMIC then filed the present action on its own behalf

6    to recover the expenses it had incurred by way of equitable subrogation.  Plaintiff's

7    complaint contains causes of action for breach of contract, breach of the implied

8    covenant of good faith and fair dealing and declaratory relief.  LSIC's Motion to Dismiss

9    now before the Court contests the validity of all three of those claims.  LSIC further

10   contends that even if Plaintiff's complaint for breach of the covenant survives pleading

11   scrutiny at this juncture, any request for attendant punitive damages is improper and

12   must be stricken.

13

14                                    **STANDARD**

15

16        **A.  Motion to Dismiss**

17        On a motion to dismiss for failure to state a claim under Federal Rule of Civil

18   Procedure 12(b)(6), all allegations of material fact must be accepted as true and

19   construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

20   Co., 80 F.3d 336,337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain

21   statement of the claim showing that the pleader is entitled to relief" in order to "give the

22   defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell

23   Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

24   47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

25   detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

26   his entitlement to relief requires more than labels and conclusions, and a formulaic

27   recitation of the elements of a cause of action will not do."  Id. (internal citations and

28   quotations omitted).  A court is not required to accept as true a "legal conclusion

                                             4

1   couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)

2   (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right

3   to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan

4   Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating

5   that the pleading must contain something more than "a statement of facts that merely

6   creates a suspicion [of] a legally cognizable right of action.")).

7          Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

8   assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and

9   quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

10  to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

11  the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Charles

12  Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough

13  facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . .

14  have not nudged their claims across the line from conceivable to plausible, their

15  complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed

16  even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

17  recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.

18  232, 236 (1974)).

19         A court granting a motion to dismiss a complaint must then decide whether to

20  grant leave to amend.  Leave to amend should be "freely given" where there is no

21  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

22  to the opposing party by virtue of allowance of the amendment, [or] futility of the

23  amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

24  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

25  be considered when deciding whether to grant leave to amend).  Not all of these factors

26  merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

27  carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

28  185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

1  "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,

2  Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

3  1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

4  1989) ("Leave need not be granted where the amendment of the complaint . . .

5  constitutes an exercise in futility . . . ."))

6       **B.  Motion to Strike**

7       The Court may strike "from any pleading any insufficient defense or any

8  redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "[T]he

9  function of a 12(f) motion to strike is to avoid the expenditure of time and money that

10  must arise from litigating spurious issues by dispensing with those issues prior to trial...."

11  Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).  Immaterial

12  matter is that which has no essential or important relationship to the claim for relief or the

13  defenses being pleaded.  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993),

14  rev'd on other *grounds* 510 U.S. 517 (1994) (internal citations and quotations omitted).

15  Impertinent matter consists of statements that do not pertain, and are not necessary, to

16  the issues in question.  Id.

17

18

19                              **ANALYSIS**

20

21       **A.  Equitable Subrogation/Contribution**

22       Plaintiff PSMIC's Complaint, while asserting causes of action for breach of

23  contract, breach of the covenant of good faith and fair dealing, and associated

24  declaratory relief, is nonetheless premised on principles of equitable subrogation as

25  indicated above.  According to Plaintiff, because it defended FOF and FPI in the

26  underlying action, and subsequently paid to settle Ms. Balfour's personal injury claim,

27  Plaintiff "became subrogated to all the rights of FOF and FPI in the sums paid for

28  defense and indemnity and Plaintiff therefore became entitled to enforce all of the

1    remedies available to FOF and FPI against [LSIC] with respect to those sums.  Compl.,

2    ¶ 25.  LSIC argues that because it was a "co-insurer" with PSMIC, Plaintiff cannot

3    pursue a subrogation claim for defense and indemnification costs and instead is limited

4    to pursing an equitable contribution claim that Plaintiff has not alleged.  LSIC's Mot.,

5    5:23-25; Reply, 5:1-2.

6         In analyzing LSIC's motion, then, the Court must first consider whether Plaintiff's

7    lawsuit properly sounds in subrogation or instead whether principles of contribution

8    should apply.  As several courts have noted, few legal doctrines have caused more

9    confusion and headache for both courts and litigants than have contribution and

10   subrogation.  American States Ins. Co. v. Nat'l Fire Ins. Co. of Hartford, 202 Cal. App.

11   4th 692, 700 (2012), citing Firemans Fund Ins. Co. v. Maryland Cas. Ins. Co., 65 Cal.

12   App. 4th 1279, 1291 (1998).  Although both concepts are equitable in nature, they are

13   nonetheless distinct.  Id.  The key to distinguishing subrogation and contribution, as

14   Plaintiff recognizes, is to determine whether the PSMIC and LSIC cover the same risk, or

15   whether the policies are primary and excess and therefore sue different risks at different

16   levels of coverage.  Plaintiff claims that LSIC's Motion ignores that key distinction.

17        As indicated above, the LSIC policy itself specified that with respect to additional

18   insureds like FOF and FPI, its coverage "shall apply as primary and not contributing with

19   any Insurance carried by such additional insured."  Compl, Ex. C. Endorsement No. 15,

20   p. 59.  LSIC's own description of its policy as primary with respect to other policies

21   maintained by FOF and FPI is entitled to deference.  Courts generally enforce the terms

22   of insurance policies pertaining to allocation issues and the characterization of a policy

23   as "primary" or "excess."  Maryland Cas. Co. v. Nationwide Mutual Ins. Co., 81 Cal. App.

24   4th 1082, 1090 (2000).   Additionally, comparison of the LSIC and PSMIC policies makes

25   it clear that they insure different risks in any event.  The coverage afforded to FOF and

26   FPI by LSIC was with respect to their liability for "ongoing operations" performed for

27   them by Gala.  LSIC Policy, Endorsement 20, Ex. D to Pl.'s Compl.  Therefore LSIC's

28   coverage, as applied to FOF and FPI, was for their vicarious liability for the work

1   performed by Gala at the subject apartment complex.  The PSMIC policy, on the other

2   hand, was a general liability policy not limited to Gala's specific work on the FOF

3   apartment complex.

4         The LSIC policy's primary application to the underlying Balfour claim is further

5   underscored by the Complaint itself, which represents that the injuries and damages

6   sought by Ms. Balfour "arise out of, or are directly and/or indirectly connected with the

7   work performed, materials furnished by, and/or services provided by GALA, its

8   employees, subcontractors or agents to and/or on behalf of FOF and FPI. . . ."  Compl,

9   6:27-7:3.  The Complaint contains no allegations that Balfour's injuries were caused in

10  whole or in part by direct negligence on the part of FOF or FPI as opposed to vicarious

11  liability for Gala's negligence.  Consequently, while the PSMIC policy would have

12  provided coverage for active negligence and whereas the LSIC coverage applied only to

13  FOF and FPI's vicarious responsibility, at least on the basis of the allegations contained

14  in the Complaint, which must be accepted as true for purposes of a motion to dismiss,

15  the underlying facts point only to vicarious liability for which the LSIC policy provided

16  primary coverage.  Therefore, on the basis of the Complaint, it would appear clear that

17  the LSIC was primary and the PSMIC policy applied only on an excess basis.  Equitable

18  contribution cannot apply because PSMIC and LSIC "did not share the same level of

19  liability and were not obligated to defend the same loss or claim."  Transcontinental Ins.

20  Co. v. Ins. Co. of the State of Pa., 148 Cal. App. 4th 1296, 1304 (2007); see also

21  Maryland Cas. Co. v. Nationwide Mutual Ins. Co., 81 Cal. App. 4th at 1089 (equitable

22  contribution "applies to apportion costs between insurers that share the same level of

23  liability on the same risk as to the same insured").  Here, the risk involved differed both

24  on the basis of LSIC's own policy and by virtue of the allegations of the complaint.

25  Although contribution is accordingly not applicable in this matter, because PSMIC's

26  policy was excess, it could pursue claims against the primary carrier, LSIC, though

27  equitable subrogation.

28  ///

1    "Subrogation is the "substitution of another person in place of the creditor or

2    claimant to whose rights he or she succeeds in relation to the debt or claim."  Fireman's

3    Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th at 1291.  In the case of insurance,

4    subrogation "allows an insurer that paid coverage or defense costs to be placed in the

5    insurer's position to pursue a full recovery from another insurer who was primarily

6    responsible for the loss.  Maryland Cas. Co. v. Nationwide Mutual Ins. Co., 81 Cal. App.

7    4th at 1088-89.  "Where different insurance carriers cover differing risks and liabilities,

8    they may proceed against each other for reimbursement by subrogation rather than by

9    contribution.  Transcontinental Ins. Co. v. Ins. Co. of the State of Pa, 148 Cal. App. 4th at

10   1304; citing Reliance Nat. Ind. Co. v. Gen'l Star Indem. Co., 72 Cal. App. 4th 1073,

11   1077-79 (1999). Because the doctrine shifts the entire cost burden, the insurer seeking

12   subrogation ("the subrogating insurer") must show the other insurer was "primarily liable

13   for the loss and that the moving party's equitable position is inferior to that of the second

14   insurer."  Id.  The subrogated insurer is said to '"stand in the shoes" of its insured,

15   because it has no greater rights that the insured and is subject to the same defenses

16   assertable against the insured.  Transcontinental, 148 Cal. App. 4th at 1303 (citing

17   Maryland Cas. Co., 81 Cal. App. 5th at 1088-1089).  Thus, an insurer cannot acquire by

18   subrogation anything to which the insured has no rights, and can claim no rights which

19   the insured does not have.  Fireman's Fund v. Maryland Cas. Co., 65 Cal. App. 4th at

20   1292-1293.

21      The essential elements for a subrogation claims against an insurer include 1) that

22   the insured has suffered a loss for which the defendant insurer is liable; 2) that the

23   claimed loss was one which the insurer seeking subrogation was not primarily liable;

24   3) that the insurer has compensated the insured for the loss for which the defendant

25   insurer is primarily liable; 4) that the insurer has not paid the claim as a volunteer; 5) that

26   the insured has an existing, assignable cause of action against the defendant insurer

27   which the insured could have asserted for his own benefit had he not been compensated

28   for the loss by the insurer; 6) that the subrogating insurer has suffered damage by the

9

1    defendant insurer's acts or omissions; 7) that justice requires on equitable grounds that

2    the loss be entirely shifted from the subrogating insurer to the defendant insurer; and 8)

3    that the subrogating insurer's damages are liquidated in nature.  Id. at 1292-93.  As long

4    as these prerequisites are met, no finding of any separate duty owed to an excess

5    carrier is required.  See Continental Cas. Co. v. Royal Ins. Co. of Am., 219 Cal. App. 3d

6    111, 118 (1990).

7         Applying these principles to the facts of the present matter, the Court has already

8    concluded that the policy issued by LSIC was primary given the allegations of Plaintiff's

9    Complaint, and since the Complaint asserts that Ms. Balfour's injuries were due to

10   Gala's negligence, it would appear equally clear at this point that the LSIC policy covers

11   any vicarious liability of FOF and FPI for her damages.  It is further clear on the basis of

12   the Complaint that PSMIC has paid for both the defense and indemnification of its

13   insureds in the Balfour lawsuit, and did not do so as a volunteer.  Additionally, for

14   purposes of claiming damages by way of subrogation, the question of whether the

15   insured  has been damaged is measured by whether or not damage would have

16   occurred had the excess carrier, PSMIC, not stepped in to cover the loss.  See Interstate

17   Fire and Cas. Ins. Co. v. Cleveland, 182 Cal. App. 4th 23, 36 (2010) ("Cleveland").  On

18   that basis, damage is present.  Further, since PSMIC's subrogated damages, in the form

19   of sum certain defense costs and a fixed sum paid, PSMIC's damages are liquidated in

20   nature.

21        The only remaining question, and probably the closest determination in assessing

22   the prerequisites for equitable subrogation here, rests with determining whether the

23   equities mandate that LSIC, as opposed to PSMIC bear the entire burden of covering

24   the defense and indemnification costs.  In making that determination, courts have looked

25   to whether the party seeking indemnification had any role in causing the accident, and

26   whether there was any contractual obligation on the part of the defendant insurer to

27   provide defense and indemnification.  See, e.g., Interstate Fire and Cas. Ins. Co. v.

28   Cleveland, 182 Cal. App. 4th at 37-39.  Here, there is no indication that PSMIC, or its

10

1   insureds, FOF and FPI, had anything to do with causing the underlying loss.  Further, the

2   LSIC policy expressly agreed to provide coverage to both FOF and FPI for damages

3   arising from Gala's negligence in performing work at the apartment complex where the

4   incident occurred. Consistent with that obligation, Gala itself agreed to defend and

5   indemnify FOF and FPI for any losses they incurred as a result of Gala's negligence at

6   the project site.  Pl.'s Compl, Ex. B, p. 17, § 3.18.1.  All these factors point to a

7   conclusion at this time that the equities do not support LSIC's failure to step in and

8   provide the defense and indemnification, with the entire burden of shouldering those

9   expenses properly transferred to LSIC.  Having determined that the adequacy of

10  Plaintiff's complaint should be assessed through the lens of equitable subrogation, the

11  Court now turns to the specific causes of action asserted by Plaintiff.

12         **B.  Breach of Contract**

13         In seeking dismissal of the Complaint's breach of contract claim, LSIC makes two

14  arguments.  First, LSIC argues that because PSMIC lacks any privity of contract with

15  LSIC, it cannot state a claim for contractual breach.  Secondly, LSIC asserts that

16  because FPI and FOF suffered no damages (since their defense and indemnification

17  costs were covered by PSMIC), there are no damages to PSMIC's insureds to which

18  PSMIC can claim subrogation.  Neither argument is persuasive.

19         For purposes of subrogation, privity of contract between insurers is not required.

20  That is because of the nature of subrogation, which looks to the nature of insurance as a

21  contract of indemnity as opposed to any relation of contract or privity between insurers.

22  Northwestern Mutual Ins. Co. v. Farmers' Ins. Group, 76 Cal. App. 3d 1031, 1050 (1978)

23  (citing Offer v. Superior Court, 194 Cal. 114, 118 (1924)).

24         Nor is there any requirement that the insured itself demonstrate damages in order

25  for its insurer to pursue by way of subrogation expenses it incurred on the insured's

26  behalf.  In Cleveland,  like the present matter, subcontractor agreements entered into

27  with the general contractor, Webcor, agreed to indemnify Webcor for any liability arising

28  out of the subcontractors' construction operations.  Frisby, an employee of one of the

1   subcontractors, Delta, was injured when an employee of another subcontractor,

2   Cleveland, was moving debris at the construction site.  Cleveland failed to procure the

3   liability insurance it was obligated to maintain pursuant to its agreement with Webcor and

4   Cleveland rejected Webcor's tender of its defense and indemnification in the resulting

5   lawsuit.  Webcor's general liability carrier, Interstate, subsequently accepted the tender

6   and funded both the defense and settlement of Frisby's lawsuit.  Webcor then instituted

7   a complaint in subrogation against Cleveland for breach of contract.  In response to that

8   action, Cleveland made a number of arguments, including a claim that because

9   Interstate's insured, Webcor, had been fully compensated by Interstate, Webcor had no

10   damages to which Interstate could be subrogated.

11       The Cleveland court rejected that argument on grounds that Webcor's damages

12   for subrogation purposes were measured by whether Webcor would have had a viable

13   claim against Cleveland "had it not been compensated for its loss by Interstate."

14   Cleveland, 182 Cal App. 4th at 36.  As the court stated:  "Cleveland's insistence that

15   Webcor suffered no loss because Interstate paid Frisby, and Interstate therefore suffered

16   no loss because it stands in the shoes of its insured, is circular and erroneous."  Id. at 35

17   n.3.

18       In Northwestern Mutual Ins. Co. v. Farmers' Ins. Exch,  the court similarly

19   observed that it "is not a prerequisite to equitable subrogation that the subrogor [here

20   FOF and FPI] suffered actual loss; it is required only that [they would have suffered loss

21   had the subrogee [here PSMIC] not discharged the liability or paid the loss."  76 Cal.

22   App. 3d at 1044.

23       The reasoning applied by Cleveland and Northwestern  is equally applicable to

24   the present matter:  PSMIC has stated a viable claim for breach of contract by way of

25   equitable indemnity.  Consequently, LSIC's motion to dismiss that cause of action for

26   failure to state a viable claim is denied.  Defendant's authority in advocating a contrary

27   conclusion is inapposite.  In Maryland Casualty v. Nationwide Mutual Ins. Co., 81 Cal.

28   App. 4th 1082 (2000), for example, the court found equitable subrogation unavailable,

1    but only because both carriers remained primarily liable on at least some part of the

2    claimed loss.  In <u>Maryland</u>, the subcontractors' policy covered the general contractors'

3    negligence only insofar as the general's liability was derivative to that of the

4    subcontractor.  The general contractor's policy, on the other hand, extended to its own

5    negligence, and the claims being asserted in Maryland, unlike the present matter,

6    extended to the general contractor's own negligence.  <u>Maryland Casualty</u>, 81 Cal. App.

7    4th at 1090-91.  Similarly, the court in <u>American States Ins. Co. v. National Fire Ins. Co.

8    of Hartford</u>, 202 Cal. App. 4th 692 disallowed one carrier's subrogation claim where both

9    carriers had issued general liability policies over different time periods.  In that instance,

10   where progressive damage was alleged spanning several policy periods, each carrier

11   was subject to liability on a primary basis for the full extent of liability, not just for that part

12   of the damage that occurred during any particular policy period. Again, unlike the

13   present matter, this means that a primary/excess situation for which equitable

14   subrogation could be asserted was not present.

15          Finally, Defendant's attempt to defeat equitable subrogation for Plaintiff's claims

16   for defense and indemnification costs, on grounds that the circumstances of the present

17   matter do not involve "true" primary/excess policies, is also misguided.  In essence,

18   Defendant asserts that even though it denominated its own policy as primary, the fact

19   that the PSMIC policy was not specifically written as a policy of excess insurance should

20   preclude subrogation.  In <u>Northwestern Northwestern Mutual Ins. Co. v. Farmers' Ins.

21   Exch.</u>. 76 Cal. App. 3d 1031 (1978), however, the court rejected that argument.  There,

22   the defendant argued that because both policies were intended at their inception to

23   provide primary insurance, it would be inequitable to shift the entire burden of defense

24   and indemnification on either carrier so as to permit equitable subrogation.  The

25   Northwestern court found that this purported distinction made no difference and dictated

26   no differing result.  <u>Id.</u> at 1047.

27   ///

28   ///

1

**C.  Breach of the Covenant of Good Faith and Fair Dealing**

2          In addition to the right to sue an insurer for breach of contract, if any insurer acts

3    unreasonably and without proper cause in refusing to provide a defense and in either

4    delaying of failing to pay benefits due under the policy, the insured can sue in tort for

5    breach of the covenant of good faith and fair dealing.  Emerald Bay Community Assoc. v.

6    Golden Eagle Ins. Corp., 130 Cal. App. 4th 1078, 1093 (2005) (citing Crisci v. Security

7    Ins. Co., 66 Cal. 2d 425, 433 (1967)).  Courts have reasoned that because insurance

8    should provide security and peace of mind through protection from calamity, a covenant

9    that the insurer will not frustrate those expectations is imposed on insurers to encourage

10   them to promptly process and pay claims.  This is a special and heightened implied duty

11   to act in good faith that is imposed by law on insurers and made enforceable in tort.

12   Love v. Fire Ins. Exchange, 221 Cal. App. 3d 1136, 1148 (1990).

13          In moving to dismiss Plaintiff's Third Cause of Action, which alleges breach of the

14   implied covenant of good faith and fair dealing, Defendants argue that in the absence of

15   an underlying contractual relationship between LSIC and PSMIC, no implied covenant

16   can attach.  Defendants further contend that even if an implied covenant is present, in

17   the absence of any damages to the insureds, FOF and FPI, PSMIC cannot state a viable

18   claim in any event.

19          Both of these arguments are misplaced.  First, because Plaintiff's implied

20   covenant claim, like its breach of contract cause of action, is rooted in equitable

21   subrogation, as explained above, privity of contract is not necessary since subrogation

22   looks to the nature of insurance as a contract of indemnity as opposed to any relation of

23   contract or privity between insurers.  Northwestern Mutual Ins. Co. v. Farmers' Ins.

24   Group, 76 Cal. App. 3d at 1050 (citing Offer, 194 Cal. at 118).  In addition, even if some

25   contractual connection were required, since FOF and FPI were specifically named as

26   additional insureds under policy, they qualify, at the very least, as third-party

27   beneficiaries of the policy.  Northwestern Mutual, 76 Cal. App. 3d at 1042.  As such, FOF

28   and FPI may enforce promises for their benefit, including the insurer's obligation to act in

1   good faith with respect to claims asserted against them.  Id.  Moreover, and in any event,

2   as the Northwestern court pointed out, under equitable subrogation, "the duty owed an

3   excess carrier is identical to that owed by the insured.  Id. at 1045 (citing Peter v.

4   Travelers Ins. Co., 375 F. Supp. 1347, 1350-51 (C.D. Cal. 1974)).

5        Defendants' second argument, that the insureds suffered no loss to which an

6   insurer like PSMIC can be subrogated, has also been rejected in the preceding section

7   of this Order.  There is no requirement that the insured itself demonstrate its own

8   damages in order for its insured to pursue by way of subrogation expenses it incurred on

9   the insured's behalf.  Cleveland, 182 Cal. App. 4th at 35-36.  This allows an excess

10  insurer like PSMIC to sue the primary insurer in subrogation for bad faith failure to

11  protect the insured's interests.  Northwestern Mutual, 76 Cal. App. 3d at 1040.

12       The cases relied on by Defendant in urging this Court to make a contrary

13  conclusion are distinguishable.  While Defendant cites language in Ermerald Bay, to

14  support its argument that an insured must sustain actual damages in order to state a

15  viable claim for breach of the implied covenant (130 Cal. App. 4th at 109), the plaintiff in

16  Emerald Bay was the insured itself, not an excess insurer seeking equitable subrogation

17  for damages the insured would have suffered had the excess carrier not stepped in and

18  provided a defense and indemnification.  Additionally, while Gulf Ins. Co. v. TIG Ins. Co.,

19  86 Cal. App. 4th 422 (2001) did deal with a potential equitable subrogation claim, it did

20  so in the context of a surety rather than an excess insurer, and the court noted that the

21  surety's performance was not a liability policy and was not even "intended to cover the

22  type of damage" done to the injured party.  Id. at 427.  Gulf noted the dearth of any

23  authority supporting the proposition that a surety "may bring a bad faith action against a

24  general liability carrier."  Id. at 429.  That does not mean, however, that a breach of the

25  covenant claim is not available between a primary and excess carrier as authorized by

26  Cleveland and Northwestern Mutual.

27  ///

28  ///

15

1

### D.  Declaratory Relief

2   In addition to its substantive claims for breach of contract and for breach of the

3   covenant of good faith and fair dealing as discussed above, Plaintiff also purports to

4   state a cause of action for declaratory relief, arguing the existence of an actual

5   controversy "between Plaintiff and Defendants concerning their respective rights and

6   obligations. . . ." Compl., p. 8, ¶ 28.  Plaintiff then proceeds to more specifically identify

7   that controversy as concerning which party "owed FOF and RPI a defense and indemnity

8   in the Underlining Action." Id.   Finally, the Complaint, as well as Plaintiff's opposition to

9   the instant motion, make it clear that defense and indemnity costs have already been

10  paid by PSMIC on behalf of both FOF and FPI, with PSMIC's costs to fund the

11  settlement alone totaling some $50,000.  Compl, ¶ 22, Pl.'s Opp'n, 4:25-26.  PSMIC's

12  defense and indemnifications are therefore liquidated in nature.

13  As Defendant points out, declaratory relief "operates prospectively to declare

14  future rights, rather than to redress past wrongs." Canova v. Trustees of Imperial

15  Irrigation Dist. Employee Pension Plan, 150 Cal. App. 4th 1487, 1497 (2007) (citing

16  Babb v. Superior Court, 3 Cal. 3d 841, 848 (1971)); see also Travers v. Louden,

17  254 Cal. App. 2d 926, 931 (1967).  If "a party has a fully matured cause of action for

18  money, the party must seek the remedy of damages, and not pursue a declaratory relief

19  claim." Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan,

20  150 Cal. App. 4th  at 1497 (2007); Gafcon, Inc. v. Ponsor & Assocs., 98 Cal. App. 4th

21  1388, 1404 (2002).  This is because declaratory relief is intended to offer guidance in

22  shaping future conduct so as to avoid breach of a party's obligations.  Britz Fertilizers,

23  Inc. v. Bayer Corp., 665 F. Supp. 2d 1142, 1173 (E.D. Cal. 2009).  If that conduct has

24  already matured, no such opportunity is present.  Consequently, where a party can

25  allege a substantive cause of action, a declaratory relief claim should not be used as a

26  superfluous "second cause of action for the determination of identical issues" subsumed

27  within the first.  Hood v. Superior Court, 33 Cal. App. 4th 319, 325 (1995).  Here, in

28  seeking declaratory relief, Plaintiff is not requesting the court's guidance to shape its

1  defense and indemnification obligations in the future.  To the contrary, the underlying

2  case has been settled by payment of a fixed sum and defense costs have been

3  expended.  Plaintiff's remedy, then, is through damages as a result of those

4  expenditures and Plaintiff has stated additional causes of action for those damages in its

5  Complaint.  As such, the cause of action for declaratory relief is superfluous and will be

6  dismissed.

7           **E.  Punitive Damages**

8           Contending that punitive damages are not assignable, Defendant argues that

9  such damages ought to be stricken in their entirety in the event Plaintiff's qualifying claim

10  for breach of the covenant of good faith and fair dealing is not dismissed (which the

11  Court has already declined to do).  Defendant's argument fails.

12          Defendant properly cites case law finding that punitive damages are not

13  assignable under California law.  See, e.g., Essex v. Five Star Dye House, Inc.,

14  38 Cal.4th 1252, 1263 (2006); Murphy v. Allstate Ins. Co., 17 Cal.3d 937, 942 (1976).  In

15  arguing that Plaintiff's damage request should be stricken on that basis, Defendant

16  points to authority finding that nonassignable claims are not subject to subrogation

17  absent express statutory authorization.  Fireman's Fund Ins. Co. v. McDonald, Hecht &

18  Solberg, 30 Cal. App. 4th 1373, 1388 (1994).  Defendant therefore requests that punitive

19  damage "claims" be stricken accordingly.

20          Despite Defendant's attempt to equate Plaintiff's request for punitive damages

21  with a claim that cannot be assigned pursuant to Fireman's Fund, a "claim" is not

22  synonymous with "damage" flowing from that claim.  Under California law, for example,

23  punitive damages are treated as a remedy that may attach to a particular claim as

24  opposed to a separate cause of action.  See, e.g., Hilliard v. A.H. Robins Co.,

25  148 Cal. App. 3d 374, 391 (1983).  In discussing the fact that nonassignable claims are

26  not subject to subrogation, the Fireman's Fund case clearly referred to a cause of action

27  since it proceeded to discuss the nonassignability of a legal malpractice claim, which

28  clearly is a substantive cause of action as opposed to an attendant remedy like punitive

17

1   damages.  Fireman's Fund Ins. Co., 30 Cal. App. 4th at 1384.  The fact that

2   nonassignable claims are not subject to subrogation, then, does not mean a claim

3   properly subject to subrogation cannot properly include punitive damages if those

4   damages are available to the insured, and Defendant cites no authority to the contrary.

5   Indeed, as discussed above, an excess insurer, standing in the shoes of the insured,

6   can recover by way of equitable subrogation all claims against the primary carrier that

7   the insured could have asserted.  See Fireman's Fund Ins. Co. v. Maryland Cas. Co.,

8   21 Cal. App. 4th 1586, 1600-01 (1994).  Those claims can include punitive damages in

9   appropriate circumstances.  See, e.g., Continental Cas. Co. v. Royal Ins. Co. of America,

10  219 Cal. App.3d 111, 125 n.6 (1990).  Defendant's motion to strike the punitive damages

11  allegations of Plaintiff's Complaint therefore fails.

12

13                                         **CONCLUSION**

14

15          For all the reasons set forth above, Defendant's Motion to Dismiss and Strike

16  Portions of Plaintiff's Complaint (ECF No. 7) is DENIED in part and GRANTED in part.

17  Defendant's requests that Plaintiff's Second and Third Causes of Action, for Breach of

18  Contract and Breach of the Covenant of Good Faith and Fair Dealing, respectively, be

19  dismissed for failure to state a viable claim under Rule 12(b)(6) are DENIED.  Plaintiff's

20  request that punitive damages sought in association with the Third Cause of Action be

21  stricken under Rule 12(f) is also DENIED.  Defendant's request for dismissal as to the

22  First Cause of Action, for Declaratory Relief, is GRANTED on grounds that there is no

23  prospective controversy, upon which such relief would be proper, as opposed to prior

24  alleged wrongdoing as alleged in Plaintiff's other two substantive claims for breach of

25  contract and breach of the covenant.

26  ///

27  ///

28  ///

1          Because the Court does not believe that the deficiencies of Plaintiff's declaratory

2   relief claim can be rectified through amendment, no leave to amend that claim will be

3   permitted.

4          IT IS SO ORDERED.

5   Dated:  September 30, 2014

6

7   _____
    MORRISON C. ENGLAND, JR., CHIEF JUDGE
8   UNITED STATES DISTRICT COURT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28