UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PUBLIC SERVICE MUTUAL INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> LIBERTY SURPLUS INSURANCE CORPORATION and DOES 1 through 10, inclusive, <br><br> Defendants. | No. 2:14-cv-00226-MCE-KJN <br><br><br> **ORDER** |

On August 25, 2016, this Court issued its Memorandum and Order (ECF No. 35) denying in its entirety the Motion for Summary Judgment (ECF No. 22) filed by Defendant Liberty Surplus Insurance Corporation ("LSIC") . Through the Motion now before this Court, (ECF No. 36) Defendant LSIC asks the Court to reconsider its decision pursuant to Federal Rule of Civil Procedure 59[1] and Eastern District Local Rule 230(j), on grounds 1) that there has been an intervening change in controlling law; and 2) that the Court committed "clear error" in its initial decision which made that decision manifestly unjust.

---

[1] While Defendant's Motion is ostensibly brought under Rule 59(e), that Rule applies to motions to alter or amend a judgment already entered, and consequently is inapplicable to the present motion, which seeks reconsideration of an order denying summary judgment. The case cited by Defendant for treatment under Rule 59(e) deals with reconsideration of an order granting summary judgment, as opposed to the posture here where summary judgment was denied. See Backlund v. Barnhart, 778 F.2d 1386, 1388 (9th Cir. 1985). Defendant's motion is properly brought under Rule 54(b) and will be considered accordingly.

1

A court should not revisit its own decisions unless extraordinary circumstances show that its prior decision was wrong. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988). This principle is generally embodied in the law of the case doctrine. That doctrine counsels against reopening questions once resolved in ongoing litigation. Pyramid Lake Paiute Tribe of Indians v. Hodel, 882 F.2d 364, 369 (9th Cir. 1989) (citing 18 Charles Aland Wright & Arthur R. Miller, Federal Practice and Procedure § 4478). Nonetheless, a court order resolving fewer than all of the claims among all of the parties is "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b). That includes an order denying a motion for summary judgment, which is "generally interlocutory and subject to reconsideration by the court at any time." Preaseau v. Prudential Ins. Co. of America, 591 F.2d 74, 79-80 (9th Cir. 1979); Andrews Farms v. Calcot, Ltd., 693 F. Supp. 2d 1154, 1164 (E.D. Cal. 2010). Where reconsideration of a non-final order is sought, the court has "inherent jurisdiction to modify, alter or revoke it." United States v. Martin, 226 F.3d 1042, 1048-49 (9th Cir. 2000), cert. denied, 532 U.S. 1002 (2001). The major grounds that justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. Pyramid, 882 F.2d at 369.

Defendant LSIC's reconsideration here is premised on two contentions. LSIC first argues that new California precedent establishes that an insurer has no subrogation claim for bad faith where its insured suffered no damage. Second, according to LSIC, this Court committed clear error in failing to find as a matter of law on summary judgment that LSIC had no duty to defend or indemnity FPI Management Company ("FPI"), the company who managed the apartment complex where the underlying injury occurred for its owner, Fair Oaks Fountains, LLC ("FOF"). As set forth below, the Court does not believe either argument merits reconsideration.

Turning initially to the viability of Plaintiff's bad faith claim, LSIC points to National Union Ins. Co. v. Tokio Marine and Nichido Fire Ins. Co., 233 Cal. App. 4th 1348 (2015),

a decision from the California's Second District Court of Appeal rendered after the subject motion for summary judgment was submitted on or about January 14, 2015. LSIC contends that the decision represents a change in controlling law, which makes reconsideration proper.

National Union involved a personal injury products liability claim stemming from a defective tire manufactured by Yokohama and sold by Costco. Plaintiff National Union, an excess insurer for Costco, stepped in and assumed Costco's defense after Yokohama's own products liability carrier, Tokio Marine, failed to do so. National Union settled the claims against Costco on the first day of trial and then filed a complaint in subrogation against Tokio Marine to recover the settlement monies it paid on Costco's behalf.

In addition to subrogation claims for contribution and for express contractual indemnity, National Union included a claim for bad faith as Costco's subrogee on grounds that Tokio Marine's products liability policy named Costco as an additional insured. The trial court sustained Tokio Marine's demurrer on grounds that because National Union had stepped in to protect Costco's interest and settle the claim, Costco itself had suffered no damage from which a subrogation claim could flow in bad faith. On appeal, the Second District agreed that the demurrer had been properly sustained, reasoning that subrogation "only permits the paying insurer to be placed in the shoes of the insured and to pursue recovery from third parties responsible to the insured for the loss for which the insurer was liable and paid." Id. at 1362, citing Gulf Ins. Co. v. TIG Ins. Co., 86 Cal. App. 4th 422, 432 (2001), The National Union court consequently found that in the absence of any harm to Costco, its insurer could not pursue a bad faith claim on Costco's behalf. Id.

While LSIC urges this Court to follow National Union on grounds that it is "California precedent" deciding the "precise issue" also present here as to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, this Court must initially point out that as a decision stemming from the California Court of Appeal,

3

National Union is not binding in resolving the present matter.  Instead, in applying state law in a diversity case like this one, the undersigned is bound only by decisions of the highest state court, here the California Supreme Court.  Evanston Ins. Co. v. Atain Specialiy Ins. Co., 2017 WL 2311401 at * 4 (N.D. Cal. May 26, 2017).  If the highest court has not itself decided the issue, it is the responsibility of a federal court sitting in diversity to predict how that court would rule.  Id.  In doing so, while this Court can look for guidance from the decisions of state appellate courts in extrapolating how the California Supreme Court would rule on this issue, it is not bound to do so if it believes the Supreme Court would not follow a lower appellate ruling.  See id.

      Against this backdrop, the Court is unpersuaded by the Second District's decision in National Union.  In its August 25, 2016, Memorandum and Order, it relied on a First District California Court of Appeal decision, Interstate Fire & Cas. Co. v. Cleveland Wrecking Co., 182 Cal. App. 4th 23 (2010).  In Interstate, like the present matter, the terms of a construction contract obligated one party to provide indemnity for another with respect to liability for construction operations.  After the contemplated indemnitor, Cleveland, failed to provide the required insurance, the indemnitee's carrier, Interstate, accepted the tender of defense and funded both the defense and settlement of the underlying personal lawsuit.  When Interstate sued Cleveland for breach of contract as its insured's subrogee, Cleveland demurred on grounds, inter alia, that because Interstate had fully compensated the indemnitee, it could not sue for subrogation on the indemnitee's behalf.  The Interstate court squarely rejected this contention, stating that "Cleveland's insistence that [the insured] suffered no loss because Insterstate paid [the insured's employee], and Interstate therefore suffered no loss because it stands in the shoes of its insured, is circular and erroneous."  Id. at 35, n.3.  As the Court observed, if Cleveland's "Illogical" contention were accepted "no insurer could ever state a cause of action for subrogation in order to recover amounts it paid on behalf of its insured, because of the very fact that it had paid amounts on behalf of its insureds."  Id. at 34.  In the court's view, that would contradict "decades of cases consistently holding that an

4

insurer may be equitably subrogated to its insured's indemnification claims." Id.

While LSIC attempts to distinguish the Interstate case on grounds it does not technically involve a breach of the covenant claim and instead examines only a subrogation claim in the context of breach of contract, that perceived distinction makes little difference. It is well established that a covenant of good faith and fair dealing is implied by law into every contract. Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 349-50 (2000); San Jose v. Old Republic Life Ins. Co., 723 F.2d 700, 703 (9th Cir. 1984). In addition to breach of contract, any insurer who unreasonably and without proper cause refuses to provide a defense and/or benefits due under the policy is also subject to being sued in tort for breach of the implied covenant of good faith and fair dealing. Emerald Bay Comm. Assoc. v. Golden Eagle Ins. Corp., 130 Cal. App. 4th 1078, 1093 (2005). Therefore, because breach of contract and breach of the implied covenant claims are interrelated in the insurance context, the fact that Interstate involved breach of contract only is of little moment. Consequently, in the Court's view, Interstate is a better indicator of how the California Supreme Court will ultimately interpret this issue than the National Union case advocated by LSIC.[2] Reconsideration as to the Court's denial of summary judgment as to Plaintiff's breach of the implied covenant is therefore DENIED.

LSIC's second argument in favor of reconsideration fares no better. LSIC argues that the Court committed clear error by refusing to grant summary judgment as to the claim by FOF's real estate manager, FPI, that it qualified for coverage. The underlying construction contract between Gala and FOF required that Gala indemnify and hold harmless not only FOF but also its agents and employees (including FPI) from losses to the extent caused by Gala or its subcontractor. Consequently, according to Plaintiff,

---

[2] It must also be noted that National Union relies heavily on another California Court of Appeal case, Gulf Ins. Co. v. TIG Ins. Co., 86 Cal. App. 4th 422 (2001), in reaching its conclusion as to bad faith liability. Significantly, this Court has already distinguished Gulf as having been decided in the context of a surety relationship as opposed to a liability insurance obligation under which equitable subrogation is sought. The Gulf decision expressly recognized that the surety's performance bond was not a liability policy and, unlike the coverage in question here, was not even "intended to cover the type of damage" done to the injured party." Id. at 427.

5

1  LSIC added FOF as an additionally named insured through endorsement.  While Plaintiff

2  contends that this Court committed clear error by refusing to foreclose FPI's status as an

3  insured and by "conflating the concept of a named additional insured with the concept of

4  an additional named insured," (see Def.'s Mot., 5: 8-10) any confusion in that regard

5  rests with the LSIC policy itself.

6  As noted in the operative Memorandum and Order, the LSIC policy includes,

7  within the definition of an insured, "[a]ny person (other than your employee) or any

8  organization while acting as **your** real estate manager."  ECF No. 35, 10:23-25 (citing

9  Def.'s Statement of Undisputed Fact ("DUF") No. 50).   The LSIC policy defines the

10 terms "you" and "your" as referring to both "the named insured shown in the [LSIC] policy

11 declarations, and any other person or organization qualifying as a Named Insured under

12 the policy."  DUF No. 49.  If the LSIC policy had referred only to the named insured,

13 LSIC would have a good argument that FOF was not the insured named in the policy

14 declarations, and that consequently FOF's manager did not qualify as an additional

15 insured under the terms of the policy.  The LSIC policy goes farther, however, in

16 according coverage not only to the insured named in the policy declarations, but also to

17 anyone else "qualifying as a named insured under the policy."  Id.  Since FOF has been

18 named as an insured by way of specific endorsement, it would appear FOF indeed

19 "qualifies" as a named insured under this definition.  At a minimum, this raises a triable

20 issue of fact as to what the language of the LSIC policy means, since if LSIC had

21 intended to limit the meaning of "you" or "your" to the named insured only there would be

22 no reason to include the additional provision that the term also encompass "any other

23 person or organization qualifying as a named insured."  To the extent the meaning of

24 LSIC's policy language is uncertain, it is axiomatic that any such ambiguity be strictly

25 resolved against the drafter, here LSIC.  Helfand v. National Union Fire Ins. Co.,

26 10 Cal. App. 4th 869, 880 (1992).  If anything, it is LSIC's own policy language that

27 conflates the concepts of named and additional insureds in this context.

28 ///

Significantly, too, case law relied upon by LSIC in support of its position that "you" or "your" be limited to the named insured only did not involve the additional language found in the LSIC policy. In <u>Gornik v. Nationwide Property and Cas. Ins. Co.</u>, 2004 WL 2822157 (Cal. App. 2004), for example, which LSIC cites for the proposition that the name of an additional insured cannot be substituted in place of word "you" or "your" in such policy language, the policy language at issue was limited to the named insured only and did not contain the additional language found in the LSIC policy extending those terms to anyone else "qualifying" as a named insured under the policy. <u>Id.</u> at * 2

Given the above, the Court finds that LSIC's second argument for reconsideration is no more successful than its first, and fails to identify any clear error. LSIC's Motion for Reconsideration (ECF No. 36) is accordingly DENIED.[3]

IT IS SO ORDERED.

Dated: August 21, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[3] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with Local Rule 230(g).